Carolyn J. Johnsen (#011894)
Scot Claus (#014999)
cjjohnsen@dickinsonwright.com
sclaus@dickinsonwright.com
**DICKINSON WRIGHT PLLC**
1850 North Central Avenue, Suite 1400
Phoenix, Arizona 85004
Phone: (602) 285-5000
Fax: (844) 670-6009
*Attorneys for Multistate Interests, LLC*

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>MACAVITY COMPANY LLC,<br><br>Debtor. | Chapter 11<br><br>Case No.: 2:17-bk-08474-BKM |
| MULTISTATE INTERESTS, LLC,<br><br>Movant,<br><br>v.<br><br>MACAVITY COMPANY, LLC<br><br>Respondent. | **MOTION FOR RELIEF FROM THE AUTOMATIC STAY**<br><br>**Re: Real property located in Princeton, Texas** |

Multistate Interests, LLC ("**Multistate**") hereby moves this Court for entry of an Order, substantially in the form attached hereto as **Exhibit A**, granting Multistate relief from the automatic stay pursuant to 11 U.S.C. § 362(d) to allow it to exercise all rights and remedies provided in the Loan Documents, as defined below, including without limitation, those relating to the real property located at the Northwest Corner of Monte Carlo Boulevard and FM 75 in Princeton, Texas (the "**Property**") described in the Loan Documents.

Multistate is the current holder of a promissory note secured by the senior lien on the Property. The Debtor defaulted on its note payments pre-petition and the note has now fully matured.

As set forth below, Multistate is entitled to relief from the automatic stay under Sections 362(d)(1), (2) and (3) of the Bankruptcy Code.

This Motion is supported by Exhibits A to I, attached hereto and incorporated herein by reference and the record in this case as a whole.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.  FACTUAL BACKGROUND AND CONTEXT**

1. The Debtor filed a voluntary Chapter 11 petition on July 24, 2017 (the "**Petition Date**"). There is no dispute that this is a single asset real estate case under Section 101(B)(51) of the Bankruptcy Code.

2. The Debtor purchased the Property for approximately $8,200,000 in June of 2016. The acquisition of the Property was financed primarily by a loan obtained from Montex Lands, Inc. ("**Montex**") in the original principal amount of $6,080,000 plus the Debtor's assumption of some existing financing on the Property. The Montex loan was secured by a first position deed of trust on the Property. *See Loan Agreement*, attached as **Exhibit B**; *Promissory Note*, attached as **Exhibit C**; *Deed of Trust, Security Agreement, Assignment of Rents and Leases and Fixture Filing*, attached as **Exhibit D**.

3. In December 2016, Montex increased its loan by $500,000. *See First Modification Agreement*, attached as **Exhibit E**. As a part of the loan transaction with Montex, the existing lienholders on the Property entered into Subordination Agreements with Montex agreeing, among other things, to subordinate their lien positions to that acquired by Montex.[1] *See Subordination and Intercreditor Agreement (First and Second Lien)*, attached as **Exhibit F**; *Subordination and Intercreditor Agreement (First and Third Lien)*, attached as **Exhibit G**. (Exhibits B-G are collectively referred to as the "**Loan Documents**").

4. On September 19, 2017, the Debtor filed its *Motion for Order Authorizing Borrowing*

---

[1] The Debtor claims that the junior lienholders are owed approximately $6,985,000. One of the junior lienholders (Finkelman) has filed a Proof of Claim in the amount of $1,485,000.

*with Priority Over Administrative Expenses and Secured by Senior Liens on Property of the Estate* (the "**Financing Motion**") [Dkt. #42] seeking approval of a priming loan in the amount of $4,855,000 to be secured by a first position lien on the Property that would prime the liens granted to Montex under the Loan Documents (the "**DIP Loan**"). Montex objected to the DIP Loan (the "**Objection**"), and after a preliminary hearing on October 12, 2017, the Court declined to grant the Financing Motion, pending an evidentiary hearing presently scheduled for November 29, 2017.

5. Montex has transferred all rights and interests in the Loan Documents to Multistate. *See Assignment of Deed of Trust and Rights under Intercreditor Agreements*, **Exhibit H**; *Assignment of Loan Documents*, **Exhibit I**. The indebtedness to Multistate currently totals approximately $8,000,000, not including attorneys' fees and costs. Multistate continues to prosecute the Objection.

6. On October 20, 2017 the Debtor filed its Plan of Reorganization ("**Plan**") [Dkt. #71] and Disclosure Statement [Dkt. #72]. As set forth below, the Plan is not feasible, and is patently non-confirmable. It contains no information or provision demonstrating how the Plan will be implemented, other than the following sentence: "The Property will be developed (horizontally) and sold to homebuilders in phases consistent with the approved Site Plan." Plan at Section 8.2.1. The Disclosure Statement lacks adequate information, and appears to be premised upon unsupported projections which assume financing that is not described in either the Plan or the Disclosure Statement, and which does not appear to exist.

7. In simple terms, there is nothing in either the Plan or Disclosure Statement which would allow a creditor or the Court to conclude that the Debtor has the cash or the financing to implement the one sentence plan set forth in Section 8.2.1 of the Plan, and Multistate believes that in fact no such cash or financing exists, or is available to the Debtor.

8. With the filing of this Motion, the primary issues relevant to the resolution of the Financing Motion, the confirmation of the Plan, and Multistate's request for relief from the stay are all effectively joined. This Motion, in conjunction with the Financing Motion and the Plan, present basic issues as to whether or not Multistate is and can be adequately protected, and whether or not

the Debtor has the ability to confirm the Plan. Multistate cannot be adequately protected by the Debtor. The Plan is simply not confirmable, because, without even considering the proposed treatment of Multistate, the Debtor has no cash or financing with which to carry it out. For all of these reasons, the Court should lift the automatic stay and terminate the ongoing proceedings in this case.

## II. LEGAL ARGUMENT

7. Section 362(d) sets forth the well-known provisions that authorize the Court to grant relief from the automatic stay.

### A. Stay Relief Must Be Granted Pursuant to §362(d)(3)

8. Single asset real estate debtors are treated specifically under Section 362(d)(3) of the Code which requires that stay relief must be granted unless "unless, not later than the date that is 90 day after the entry of the order for relief . . . (A) the debtor has filed a plan of reorganization *that has a reasonable possibility of being confirmed within a reasonable time*; or (B) the debtor has commenced monthly payments …."(emphasis supplied). It is unquestioned that the Debtor in this case has not commenced monthly payments to Multistate. Therefore, under the plain language of Section 362(d)(3) if the Plan has no reasonable possibility of being confirmed, Multistate is absolutely entitled to relief from the stay. See *In re CBJ Development, Inc.,* 202 B.R. 467 (9th Cir. B.A.P. 1996), citing *In re LDN Corp.*, 191 B.R. 320 (Bankr. E.D. Va. 1996), and *In re Leeward Subdivision Partners, LLC* 2010 WL 6259983 (9th Cir. B.A.P. 2010).

9. In *Leeward* the 9th Circuit Bankruptcy Appellate Panel noted:

> Now, pursuant to § 362(d)(3), all single asset real estate debtors must propose a plan within 90 days, which has a "reasonable possibility of being confirmed within a reasonable time" or pay the secured creditor interest at the contractual non-default rate. If the single asset real estate debtor can do neither, it loses the protection of the § 362(a) stay and "[in] essence, the Chapter 11 case is over." Id. at 1308. Thus, the bankruptcy court must grant stay relief to a moving creditor if the single asset real estate debtor fails to comply with § 362(d)(3). Centofante v. CBJ Dev., Inc. (In re CBJ Dev., Inc.), 202 B.R. 467, 470 (9th Cir. BAP1996).

Section 362(d)(3) was added to "ensure that the automatic stay provision [was] not abused, while giving the debtor the opportunity to create a workable plan of reorganization." NationsBank, N.A. v. LDN Corp. (In re LDN Corp.), 191 B.R. 320, 326 (Bankr.E.D.Va.1996) citing S.Rep. No. 168, 103rd Cong., 1st Sess. (1993). But where "debtors with little hope of successfully reorganizing delay the bankruptcy process while secured creditors are left helplessly on the sidelines," §362(d)(3) provides relief. Id. at 327.

10. As noted, although the Debtor filed its Plan within 90 days of the Petition Date, the Debtor cannot demonstrate that the Plan has a reasonable possibility of being confirmed within a reasonable time.[2] The Plan is unconfirmable in the first instance because, as outlined below, it is not feasible. Thus stay relief should be granted immediately.[3]

11. As previously noted, the Debtor's Plan is premised on the theory that future "development" of the Property will generate the cash to pay creditors, such that the totality of the Plan is effectively the above cited sentence from Section 8.2.1 of the Plan ("The Property will be developed (horizontally) and sold to homebuilders in phases consistent with the approved Site Plan."). This begs the obvious question: How will this undercapitalized Debtor *actually* develop the Property, and where will the money to do so come from? The Plan answers neither question.

12. That the Plan is silent on this point is not surprising because the Debtor has no actual existing capital structure. It has never been disputed in this case that the Debtor has no cash, and it is apparent from a review of the Plan and Disclosure Statement that the Plan is based upon a three-legged stool of proposed financing: (i) the Debtor obtaining a development loan, (ii) the Debtor obtaining an equity/cash infusion, and (iii) the actual sale of lots to builders. This is evidenced by the

---

[2] The Debtor has the burden on this issue pursuant to Section 362(g).

[3] In addition, the Plan is unconfirmable, for at least the following additional reasons:
   (i)   The Plan discriminates unfairly against Multistate. The Plan provides for the repayment of Multistate's loan over a seven-year period at an interest rate of 5 percent (5%), however, the Multistate loan would be subordinate to the proposed DIP Loan and presumably to any new financing. That result increases substantially the risk to Multistate, a risk uncompensated by a 5% interest rate. In contrast, the lender on the DIP Loan receives a 12 percent (12%) interest rate despite its being in a first lien position. Junior lienholders under the Plan receive an interest rate of 15 percent (15%). This scheme is patently inequitable and discriminatory, and cannot meet the cramdown standards of the Code.
   (ii)   The Plan improperly proposes to force Multistate to release its lien as lots are sold without preserving its right to credit bid. See generally RadLAX Gateway Hotel LLC, et. al. v. Amalgamated Bank, 132 S. Ct. 2065 (2012).

projections attached to the Disclosure Statement, which reflect that at some unspecified time in year 1 of the Plan (not by Plan confirmation), the Debtor will have received: (i) a development loan ("Net development loan activity") in the amount of $12,499,568, (ii) equity ("Scheduled equity investments") in the amount of $7,857,827, and (iii) proceeds from "Lot sales to builders" which are projected over the course of an undefined "Phase I", in the amount of $16,720,000. In other words, the Plan is premised on cash that does not exist, and which is to come in the future, in an amount of roughly $37,000,000. The Court must keep in mind that the Property, at this time, is raw undeveloped land—the conclusion is that the Plan contemplates that unidentified parties will, over a one year period, invest $37,000,000 into Property which is nothing more than farmland.

13. Moreover, against this implausible backdrop, the Court should note the following:

- The Debtor has not sold any lots. Exhibit G to the Disclosure that is supposed to consist of builder contracts is omitted, and upon information and belief, none actually exist.

- There is no reasonable prospect that builders will buy lots at this time, or at any reasonably foreseeable time in the future, given the speculative future of the development. Even if the Debtor were on some basis able to procure the proposed DIP Loan and grade some portion of the Property, Multistate believes that builders will not purchase "dirt pads" without developed infrastructure—which is not within the DIP Loan's contemplation.

- There is nothing in the Plan or Disclosure Statement that would allow any creditor or the Court to conclude that the Debtor has a development loan or equity financing, available, or even a proposal (yet alone commitment) to provide such funding.[4] The Debtor's principal has admitted he does not have financing or any current prospects despite his efforts over the past year and contacts with dozens of potential lenders and investors.

14. The Debtor's admitted lack of capital and its inability to obtain new capital means that the Plan is not feasible. The Debtor's Plan is to reorganize without committed financing of any kind, and for creditors to wait, on the hope that the Debtor will come up with something. While a plan need not provide a guaranty of success to meet the feasibility test, the Debtor must show

---

[4] The Plan provides that the junior lienholders will merely convert their claims to equity—not that they will make any cash equity infusion.

minimally that it can accomplish what it proposes to do, in the time period provided in the Plan, and on the terms in the Plan. *See generally In re Bashas' Inc.*, 437 B.R. 874 (Bankr. D. Ariz. 2010). In short, the Debtor needs to show that it has or can obtain all of the financing and cash required to make the Plan work. It cannot do so and there is no alternative but to conclude that the Plan is not feasible. Relief from the stay is thus mandated by Section 362(d)(3) of the Code.

**B.     Stay Relief Must Be Granted Pursuant to § 362(d)(2)**

15.     Based on the Debtor's own admissions, stay relief may be alternatively granted under this Section of the Code.

**(1)     The Debtor lacks equity in the Property**

16.     The Debtor claims in the Financing Motion that Multistate is protected by an equity cushion based upon a CBRE appraisal valuing the Property at $28,000,000.[5] However, in its Reply to the Objection [Dkt. #59], the Debtor relies on the asserted liquidation value of the Property—the valuation of the Property most relevant at this juncture given the state of the Property, the Debtor's obvious lack of capital, and resultant impossibility of any realistic reorganization.

17.     In his Declaration attached to the Reply, the Debtor's financial consultant Morris Aaron analyzes the Debtor's alleged equity cushion starting with the noted $15,000,000 liquidation value. From that number, he deducts closing costs and commissions to conclude that if the Property is sold today, the Debtor's net proceeds would be $14,802,500. This amount is over $100,000 less than the total liens on the Property at this time, without taking into account the nearly $5 million DIP loan the Debtor seeks. (*See also* Exhibit E to the Debtor's Disclosure Statement and discussion asserting the same). Thus the Debtor's own pleadings confirm that it has no equity in the Property.

**(2)     The Property is not Necessary to an Effective Reorganization**

18.     The seminal case of *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 376, 108 S. Ct. 626, 633, 98 L. Ed. 2d 740 (1988) sets forth the standard required for the Debtor to satisfy this prong of the Section 362(d)(2) test:

---

[5] This appraisal was actually obtained by a prospective lender to the Debtor, Silver Arch, (who the Debtor now claims failed to honor a financing commitment). The Debtor simply hired CBRE for $1,000 and obtained the appraisal unchanged. Multistate disputes the validity of the CBRE appraisal and notes that the Property is still in the same state as in 2016 (raw vacant land) when both an appraisal and the purchase price indicated a value in the $8-9,000,000 range.

> What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it, but that the property is essential for an effective reorganization that is in prospect. This means, as many lower courts, including the en banc court in this case have properly said, that there must be 'a reasonable possibility of a successful reorganization within a reasonable time.'

*United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 376, 108 S. Ct. 626, 633, 98 L. Ed. 2d 740 (1988).

19. As set forth in detail in Section A above, there is no effective reorganization here that is in prospect, as the Debtor's Plan does not have a reasonable probability of success in a reasonable time. Therefore, the Court must grant stay relief pursuant to 362(d)(2).

**C.  Stay Relief Must Be Granted Pursuant to § 362(d)(1)**

20. Finally, the Court should grant relief from the automatic stay for cause. Cause has no clear definition and is determined on a case-by-case basis, but specifically includes a lack of adequate protection. *In re Tucson Estates, Inc.*, 912 F.2d 1162, 1166 (9th Cir. 1990). Here, cause exists for two reasons. First, the Plan is unconfirmable as a matter of law as described above (*see e.g. In re Smith* 333 B.R. 94 (Bankr.M.D.N.C. 2005) ("Cause can exist to lift the automatic stay when a debtor fails to propose a feasible chapter 11 plan of reorganization. . . ")(*citing In re Brown*, No. 97–5302, 1998 WL 734701 at *5–6, 1998 U.S. Dist. LEXIS 16436 at *14–15 (E.D. Pa. Oct. 19, 1998)).

21. Second, Multistate cannot be adequately protected. As to adequate protection, Multistate further incorporates by reference all of the terms of its Objection to the Financing Motion which demonstrate the lack of adequate protection provided to Multistate. As those pleadings indicate, the Debtor's scheme in this case vitiates Multistate's specifically bargained-for protective loan covenants, ignores the post-petition development risks inherent in the Debtor's project, and unfairly shifts the entirety of the economic risk of the transaction to Multistate. In both the Financing Motion and the Plan, the Debtor seeks to convert Multistate from a senior secured lender in a defined, limited acquisition financing transaction, to an unwilling long term investor in a speculative land development transaction. Because the Debtor so thoroughly changes and negatively impacts Multistate's rights, Multistate is not adequately protected and stay relief must be granted.

### III. CONCLUSION

Based on the foregoing, Multistate respectfully requests that the Court enter an Order lifting the automatic stay to allow it to proceed with all rights and remedies it may have with respect to the Property and waiving the fourteen day waiting period of Fed.R.Bankr.P. 4001(a)(3).

**DATED** this 8th day of November, 2017.

                          **DICKINSON WRIGHT PLLC**

                          By: */s/ Carolyn J. Johnsen*
                          Carolyn J. Johnsen
                          *Attorneys for Multistate Interests, LLC*

**FOREGOING** electronically filed with the Clerk of the U.S. Bankruptcy Court for the District of Arizona this 8th day of November, 2017, with a **COPY** served this same date via e-mail or regular mail, as indicated in address, on the following parties:

John R. Clemency
Lindsi M. Weber
GALLAGHER & KENNEDY PA
2575 E. Camelback Rd., Suite 1100
Phoenix, AZ 85016
john.clemency@gknet.com
lindsi.weber@gknet.com
*Attorneys for Debtor*

Patty Chan
UNITED STATES TRUSTEE
230 North First Ave., Suite 204
Phoenix, AZ 85003
Patty.chan@usdoj.gov
*Attorneys for U.S. Trustee*

D. Lamar Hawkins
Heather A. Macre
Aiken Schenk Hawkins & Ricciardi
2390 E. Camelback Rd., Suite 400
Phoenix, AZ 85016

| | |
|---|---|
| 1 | dlh@ashrlaw.com |
| | ham@ashrlaw.com |
| 2 | *Attorneys for D& J Commercial, LLC* |
| 3 | |
| | Al McNatt Family Partnership |
| 4 | 4401 N. 1-35, Suite 107 |
| | Denton, TX 77081-7500 |
| 5 | |
| | D&J Commercial, LLC |
| 6 | 1044 East Sandpiper Drive |
| | Tempe, AZ  85283 |
| 7 | |
| 8 | Princeton Meadows |
| | 4401 N. 1-35, Suite 107 |
| 9 | Denton, TX 76207 |
| 10 | |
| 11 | /s/ *Pamela Sabori* |
| | PHOENIX 77183-1 408809v3 |